1. EXECUTORS AND ADMINISTRATORS—ACCOUNTING—INCONSISTENT CLAIMS.

   1. An executrix took charge of a store which belonged to her testator, and conducted the business as her own, claiming to have purchased the goods. Creditors then brought suit to have her charged with the value of the good-will of the business, and also for an account for profits. *Held*, that the two claims were inconsistent, as the one proceeded on the theory that the business was her own, and the other that it was continued as that of the estate, and the creditors, having agreed that she should be charged with the value of the goods at the time she took charge, and having offered no evidence on which to predicate a finding of profits, must be held to their election to rest their claim on her liability for the value of the good-will.

2. SAME—ASSETS—GOOD-WILL.

   The good-will of the business of a decedent is an asset to be accounted for by the personal representative; and where an executrix takes charge of a store which belonged to her testator, and conducts the business as her own, she is chargeable with the value of the good-will.

3. SAME—USE OF NAME.

   The good-will of the business of a person deceased does not include the right to use the name of the deceased.

4. SAME—USE OF NAME—LIABILITY TO ACCOUNT FOR.

Laws N Y. 1833, c. 281, and Pen. Code N. Y. § 363, which make the transaction of business under fictitious names or the name of another a criminal offense, and Laws N. Y 1880, c. 561, as amended by Laws 1881, c. 389, which allows the use of the name of a person deceased, for the purpose of continuing business, upon filing a certificate setting forth the person dealing, or intending to deal, under such name, and which requires the value of the right, when so exercised, to be accounted for as a part of the estate of the deceased, must be construed together; and therefore, where an executrix uses the name of her testator to continue business illegally, because no certificate was filed, she cannot be charged with the value of the right to use the name as part of the assets, nor as an element of the good-will.

5. SAME—REIMBURSEMENT OF EXECUTOR.

An executrix who paid certain debts of her testator in full, out of her own money, is only entitled to have such debts share *pro rata* in the distribution of the assets.

6. SAME—COSTS—PRIORITY OVER DEBTS.

A claim for costs recovered by a creditor in an action against the executrix to establish his claim is entitled to priority over the debts of the estate.

Proceedings for the judicial settlement of the accounts of Lydia W. Randell, as executrix of James Randell, deceased.

*Henry G. Atwater*, for creditors. *Edward S. Clinch*, for executrix.

WEIANT, S. The testator died on the 22d day of December, 1884. His will was admitted to probate January 21, 1885. The testator appointed his widow the sole executrix of his will. At the time of his death, and for many years prior thereto, he had been engaged in the retail gents' furnishing goods business, at Nos. 554 and 556 Eighth avenue, New York city. The executrix, on or about December 26, 1884, caused an inventory or valuation to be made of the goods and fixtures in this store. This was not, nor has any statutory inventory been made at any time of the estate of the testator. The store remained closed from the time of the death of the testator until or about December 26, 1884, when the same was opened, and thereafter operated, by the executrix. She claims to have then become the purchaser of the stock of goods and fixtures, and thereafter to have continued the business on her individual account. The accounts herein charge the executrix with this inventory value of these goods and fixtures and proceeds, upon the theory that she thereby became the owner thereof, chargeable with such value, and that the business carried on by her thereafter was her own, and not on account of the estate. The Mutual Life Insurance Company, a creditor, filed objections to the accounts, and the issues thus raised were litigated. Many of these objections were general; and I shall not, therefore, notice them, except so far as the same were given some point on the hearings, or pressed upon me by counsel in their oral arguments or briefs, the latter of which were fully and carefully prepared.

The most important question presented arises upon the claim that the executrix should be charged with the value of the good-will of the testator's business. Before giving this question consideration, I deem it best to dispose of the claim, which for the first time is presented by the brief of the counsel for the contestant, that the executrix should be charged with the profits made by her in the business since the death of the testator. As remarked, this claim was not made upon the trial, and it was not litigated. If it be assumed, however, that there was no sale of the goods to the executrix, or, if one, that it was illegal, and that she is liable to account for such profits, there is no evidence upon which to predicate an intelligent finding of profits, and, if such there were, the amount of the same. This subject was not gone into at all for that purpose. The inquiry as to purchases, sales, and expenses in the business was confined to the testator's life-time, except for one year, and as bearing only upon the value of the good-will. The value of the goods and fixtures as fixed by the inventory was, by express assent in open court, taken as the sum with which the executrix should be charged. No attempt was made to follow the property, nor to inquire into any after-acquired property in the

business, as being the property of the estate for which the executrix was ac countable, or for the use or profits of which the estate was entitled. For these reasons this claim should now be disallowed.

But this claim to an account of profits cannot stand with the one that the executrix must be charged with the value of the good-will. The two are inconsistent. They cannot stand together. One proceeds upon the theory that the business was continued as that of the estate; the other, that the business, with the good-will, passed to the individual benefit of the executrix. She cannot be held for both. If the business was, as matter of legal right, that of the estate, then the good-will must also have gone to the benefit of the estate, and its value passed in enhancement of profits. The contestant has tried the issue resting upon the claim of the liability of the executrix for the good-will, and should now be held to that election.

Having therefore reached a conclusion adverse to the claim of profits, and that the continuation of the business must be regarded as that of the executrix individually, I shall now proceed to the consideration of the question as to whether or not she is chargeable with the value of the good-will. As to this, I am of the opinion that she must account for the same. It was in contravention of a well-established rule of law, that one acting in a fiduciary capacity shall not deal with the trust-estate to his individual benefit, that the executrix took to herself the property of her testator in the manner that she did; and, upon proper election, I think the business must have been treated as that of the estate. That not having been done, however, she is nevertheless liable to account for all property of the testator of which she has availed herself, including the good-will. It appears from the authorities that the good-will of the business of a merchant is an asset to be accounted for by an executor or personal representative. In *Hitchcock* v. *Coker*, 6 Adol. & E. 438, Chief Justice TINDAL says it "is a subject of value and price. It may be sold, bequeathed, or become assets in the hands of a personal representative of a trader." This case is cited with approval in *Howe* v. *Searing*, 19 How. Pr. 14. The law was so stated by Lord HARDWICKE in *Gibblett* v. *Read*, 9 Mod. 459, and so held by Lord KENYON in *Worral* v. *Hand*, Peake, *74.

I do not think, however, that this good-will includes the right to use the name of the testator. While, under the common law, in the absence of fraud, it may not have been illegal to trade or do business under a fictitious name, or in the name of a deceased person, still it would seem from authority that the right to use the name of an old firm or trader did not pass as a part of the good will, (*Howe* v. *Searing*, *supra*; *Morgan* v. *Schuyler*, 79 N. Y. 490;) and I find no case that holds that there is a right to use a name that survives and constitutes an asset for which a personal representative is accountable. The cases of *Hegeman* v. *Hegeman*, 8 Daly, 1, and *Manufacturing Co.* v. *Hall*, 61 N. Y. 226, are not adverse to this conclusion. The latter is rather a case of trade-mark than of good-will. It relates to the right to use the name of a place or property or of an article or thing, and not the name of an individual or person. The former held that the name could not be used as the name of the existing firm. Good-will is generally described as a probability that "the old customers will resort to the old place." Justice Story describes it as "the advantage or benefit which is acquired by an establishment beyond the mere value of the capital, stock, funds, or property employed therein," etc., (Story Partn. § 99;) and, on the question as to whether the right to use a firm name is part of the good-will, says: "But it has been thought that this right, however valuable, does not fall within the true character and nature of good-will," (Id. § 100.) Good-will is connected with the place rather than the person, and is an incident to the ownership of or right to occupy or use property. *Morgan* v. *Schuyler*, *supra*.

But, however this may have been prior to statutory enactment as to the use of fictitious names, or the name of another, the fact that such use of names

is now prohibited by statute must eliminate from consideration the right to use the name of the testator, in determining what shall be held to be the good-will for which this executrix is chargeable.    By chapter 281 of the Laws of 1833 it was enacted that no person should thereafter transact business in the name of a partner not interested in the firm, or use the designation " ' and Company ' or ' & Co.,' " unless it should represent an actual partner. This enactment prevented any person from doing business in the name of another or under a fictitious name.    This statute has been construed as of general application, and applies to persons in existence as well as where a partner has retired or is dead.    *Howe* v. *Searing, supra*; *Hegeman* v. *Hegeman, supra*; *Wood* v. *Railway Co.*, 72 N. Y. 196.    By its provisions, a violation of this statute is made a criminal offense, and also, by section 363 of the Penal Code, except in case of one of the authorized uses of such names provided by statute, all subsequent legislation on this subject is in modification of this act of 1833, or in limitation of, or to relieve from its effect.    Chapter 347, Laws 1849, modified the same as to copartnerships located in foreign countries. Chapter 400, Laws 1854, made provision for the continuation of the use of partnership names under conditions therein prescribed.    Chapter 256, Laws 1868, conferred the like power as to limited partnerships.    Then follows chapter 561, Laws 1880, as amended by chapter 389, Laws 1881, which provides that in certain cases the right to use the name of a deceased resident of this state for the purpose of continuing and carrying on such business shall survive, and that, "in all cases where the right hereby given is exercised, such right to the use of such name shall form a part of the personal estate of such deceased, and shall pass, or be disposed of and accounted for as such."    Now, it is contended that the value of the right under this act should be accounted for by the executrix either as a separate asset, or as a part or element of the good-will.    But, as we have already found, the use of a fictitious name, or that of a deceased person, is illegal, and cannot, therefore, form any part of the good-will.

Is she, then, liable to account for the value of the right to use the name under the act of 1880?    I think not—*First*. Because the evidence is insufficient to establish that she has used the name of the deceased.    It is true, the name of "Randell" was used, but that was also her name.    Besides, it was rather a designation of the name of the place.    *Second*. Because I think she is only liable in the event that she exercised such right in accordance with the statute.    This statute confers the "right to use the name" of the deceased person in the cases therein provided, and, after conferring such right, provides that "in all cases where the right hereby given is exercised such right to the use of such name shall form a part of the personal estate of such deceased, and shall pass, or be disposed of and accounted for, as such."

To hold that the executrix is liable to account for the use of the name, in the event that such use is exercised without filing the certificate specified in the statute, is equivalent to holding that the legislature intended reviving or conferring the right to do business under a fictitious name, and contrary to public policy, without providing any safeguard for the protection of the public.    This statute should be read and construed in connection with the general statute prohibiting the doing of business under fictitious names; and such statute should not be held abrogated except by express repeal, or clearly inconsistent subsequent enactment.    Nor could it have been the intention of the legislature to hold a person liable for the value of the use of the name of a deceased person as a part of his estate, and at the same time make it illegal to use the name.    It is rather to be presumed that the use of the name without filing the certificate is still illegal, but, when such use is in accordance with the law requiring the making and filing of the certificate, then such right so exercised must be accounted for as a part of the personal estate.    It is the using of the name of another, and not the failure to make and file the certificate, that is declared illegal, and made a crime.    Pen. Code, § 363.

Nor, again, is it to be held that the legislature under this act—unless it.clearly appeared otherwise—intended to depart from its purpose, as manifested in its other enactments on this subject, to make the execution and filing of the certificate a prerequisite to the lawful right to use a fictitious name, or that of another, in the transaction of business. The words, "and the right hereby given may be exercised, under the provisions of°this act, in the cases of all such persons who have died within five years last past," import that it is the right exercised under or in accordance with that act which is to be accounted for as an asset. It is not to be presumed that the legislature, in the absence of words or reasons to the contrary, intended the enactment of one rule for those instances of death in the past, and another for the future. It would seem, however, that this statute was enacted to only enable the estates of deceased persons to be settled up in a more advantageous method financially, and not to continue the names of deceased persons indefinitely at the head of business houses. It is frequently the case that most money can be realized from an estate by a continuance of the business of the deceased for a time; and it is not infrequent that a testator directs in his will that his business be continued to carry out his purposes as to the disposition of his property, and the use of his name might prove highly beneficial in these respects. It was for such cases, undoubtedly, that the legislature intended by this act to provide. But did it intend to authorize an unlimited and indefinite use of the name? The language of the statute, "the right to use the name of the deceased for the purpose of continuing and carrying on such business shall survive," somewhat authorizes the inference that only the conferring of the right to this limited use was the purpose of the legislature. As lending some force to this construction, it is to be noticed that the language of this act of 1880 does not in terms provide for the filing of a new certificate in the event of a change of persons exercising the right to use the name of the deceased person, while the acts of 1854 and 1868, above alluded to, provide that, "On every change of the person or persons continuing the use of such name, he or they shall sign * * * a certificate," etc. Again, the absence of such words as "assigns or appointees," which we find in the act of 1854, may lend a further circumstance to sustain this view of the statute. And was it the purpose of the legislature to authorize and continue the use of the name of a deceased person after his own estate is settled, and have the right to such use to pass into the charge of strangers, who might bring his name into disrepute, and place it upon the legal records as the name of a bankrupt, or even fraudulent trader, or to barter it away, as his property, to a new purchaser? Was it the legislative intent to·compel such disposition of the names of deceased persons as might result to the annoyance and disgrace of his living relatives? This far-reaching, undesirable public policy is not to be imputed to the legislature, without being clearly expressed. However, it is the right exercised under this statute of 1880, and in accordance with its provisions, that is to form a part of the personal estate, and to· be accounted for; and, such right not having been exercised within the view I have taken of the evidence, and first above advanced as to the construction to be given to the statute, the executrix is not to be charged with any value for the right to the use of the name of the deceased. But it may be that I am in error in the impression I entertain as to the limited construction to be given to the statute as last above advanced; and, if so, the right to use the name of the deceased would still remain as an asset to be sold or otherwise disposed of by the executrix. I shall therefore leave that matter open, for the parties interested to take such proceedings as they may be advised as to the disposition of such right, if any, and, if disposed of, subject to a further accounting for whatever may be realized on such disposition.

This brings us to a consideration of the amount which the executrix shall be charged for the good-will without the right to the use of the name of the deceased. This value of the good-will must be determined as of

the time when the executrix took the stock of the store and proceeded to carry on the business as her own, which was about December 26, 1884. This value must be based upon the then existing circumstances and conditions. Evidence has been adduced as to the character and extent of the business up to the time of the death of the testator, and for a year thereafter; as to whether or not the same was profitable, and the general results thereof; the length of time of the unexpired lease; the chances of obtaining a renewal of the lease, and the terms thereof; the changed conditions of trade; and many other circumstances, all having a more or less important or remote bearing upon this question of value. To aid me in forming a just estimate of the value of the good-will, there was but one witness called—Mr. William J. Golding—to advance a judgment as an expert. He impressed me as an intelligent and fair business man. His opinion was taken upon different phases of the question, based upon hypothetical statements of facts, many of which included an assumption of conditions and circumstances which cannot fairly be considered in reaching an estimate of the fair and true value of the good-will as of the time and under the circumstances existing when the executrix took to herself the benefit thereof. Elements and circumstances that are speculative, and of so uncertain a character or nature as to not carry with them the element of reasonable probability, should be excluded from the basis for a true judgment. After a careful review of Mr. Golding's testimony, and taking his answers given to questions which come the nearest to an assumption of the true and legitimate facts and circumstances which should enter into a correct judgment, I find his answers wherein he says that two or three thousand dollars, and from $2,500 to $3,000, are most nearly the value of the good-will. I therefore take the estimate of $2,500, as being most nearly the true estimate. But this is qualified by his testimony that in making this valuation he includes a right to use the name of the deceased. This latter he values at $2,000, as I infer in fixing the valuation of the good-will of $5,000 to $7,000 for a five-years continuation of the lease and business. This, upon about the same ratio that the $2,500 bears to the $5,000 to $7,000, would detract from the $2,500 to the extent of about $800, and leave the value of the true good-will at $1,700; which sum I accordingly fix as the value thereof, with which the executrix must be charged. The executrix has no just cause to complain of the accuracy of the amount of this charge. If there is indefiniteness as to the value of the good-will, it is chiefly due to her failure to follow her line of duty as executrix. She should have promptly sold the lease, business, and good-will; and she would then have been charged only with the sum realized on such sale.

As to the claim of the executrix against the testator on the $2,500 note dated May 10, 1879, I am of the opinion that under the evidence it is established that she is a creditor to the extent of the amount thereof, and interest thereon, from its date, and that she is entitled to share *pro rata* thereon with the other creditors on the distribution. Even if the note were a gift, I think this is so, as no attack is made upon the same as fraudulent as against the creditors of the testator. If such a claim were made, its being a gift would not, alone, necessarily invalidate the note. *Jackson* v. *Badger*, 109 N. Y. 632, 16 N. E. Rep. 208; *Bucklin* v. *Bucklin*, 1 Abb. Dec. 242; *Phillips* v. *Wooster*, 36 N. Y. 412. The case of *Insenhart* v. *Brown*, 2 Edw. Ch. 341, I do not consider as in conflict with this conclusion. The obligations given by the testator in that case were made at such time, and under such circumstances, as to warrant the finding that they were invalid as to creditors for valuable consideration.

But there is some evidence which would seem to authorize the inference that Mrs. Randell had some interest in the life insurance policy cashed by the insurance company for the testator. Within a few days after he received the money, he gave this note for approximately the same amount. Mr. Dow tes-

tifies that the note was given for the money Mr. Randell got from the insurance company. The note was, by direction of the testator, entered in his account-book among his bills as a liability. The note itself imports an indebtedness which has not been overthrown.

The claim of the Mutual Life Insurance Company, that the costs recovered by it in its action against the executrix to establish its claim against the estate are entitled to priority of payment over the debts of the testator, I think is well founded. Both upon principle and authority, this is so. *Estate of Douglass*, 3 Law Bull. 32; *Shields* v. *Sullivan*, 3 Dem. Sur. 296; *Hall* v. *Dusenbury*, 38 Hun, 125; *Insurance Co.* v. *Stevens*, 37 N. Y. 536. The costs recovered by a creditor in an action brought to establish a claim are not in fact any part of the debt of the deceased. The order of payment of claims against the estates of deceased persons prescribed by the statute applies to the obligations of the deceased. True, the costs are merged in, and form part of, the judgment, and ordinarily enforcement of the payment thereof goes with enforcement of the judgment; but in proceedings for payment out of or against particular funds or properties this is not always so, and, where equitable principles require it, payment of costs should be made separate from the debt. No law prohibits this in the case of the settlement of the estates of deceased persons; and where expense is imposed upon a creditor to enforce his claim by resistance thereto made in the interest of the fund or property, or those entitled to the same, I do not see why such creditor should not be first reimbursed to the extent of the costs awarded him for such reimbursement. It is but the marshaling and disposing of funds or properties in court upon principles of equity, where no fixed rules of law intervene to the contrary. The case of *Shute* v. *Shute*, 5 Dem. Sur. 1, seems to hold that such costs have no priority. I think, however, that the learned surrogate may not have given the question his usually careful thought.

In making distribution of the assets that shall appear to be applicable to the payment of the debts of the testator, all debts that have been established, either by failure to reject, or otherwise, must share *pro rata*, including such as may have been paid by the executrix out of her own moneys. The claim of the contestant that such debts as the testatrix may have thus paid shall not be permitted to share in the distribution is neither equitable nor legal. *Stilwell* v. *Melrose*, 15 Hun. 378; Redf. Sur. Pr. 532. The principle of voluntary payments does not apply. There is no doubt but that when she paid these debts the executrix supposed that the estate was solvent. She made a mistake in so doing, and for this error she must lose to the extent that she has paid such claims over and above the amount applicable to each upon the distribution. She cannot, however, be reimbursed for any overpayment. The claim of Dr. Joseph M. Finch has no preference. It is a general debt of the testator, and must be paid as such. Costs to each party to be taxed upon bills to be presented. Let a decree be presented for settlement, and entry accordingly.