KENYON *et al. v.* OLNEY *et al.*

(*Supreme Court, General Term, Fourth Department.* July, 1891.)

1. ADMINISTRATOR—ACTION FOR CONVERSION—TITLE TO GOODS.

Decedent's ice business was conducted after his death by K., one of his administrators, his father-in-law, for the support of the family, he taking charge of the stock and wagons for that purpose. In 1883-84, K., in his individual capacity, executed chattel mortgages on the stock and wagons, part of which were left by decedent, and part acquired by K. in the course of the business. The property was sold under the mortgage, and purchased by defendants. *Held,* that the administrators had no such title to such of the goods sold as had not originally belonged to the estate as would enable them to maintain an action for their conversion, and, as to such as had belonged to the estate, that the other administrators, having known of the mortgages before the sale, to which they made no objection, and defendants being ignorant that the property purchased was assets of the estate, conversion would not lie therefor against defendants.

2. SAME—SALE BY ADMINISTRATOR.

Some of the property in question having been sold by K. directly to one of the defendants, and the price thereof paid in full without fraud or collusion, conversion would not lie at the suit of the administrators against the purchaser of that portion.

Appeal from circuit court, Oneida county.

Action by Henry Kenyon and Nancy H. Williams, as administrators of Isaac N. Williams, deceased, against William R. Olney and others. From a judgment of nonsuit plaintiffs appeal.

Argued before HARDIN, P. J., and MARTIN and MERWIN, JJ.

*C. W. White,* for appellants. *J. P. Olney,* for respondents.

MERWIN, J. This is an action at law for the conversion by the defendants of certain personal property. It is alleged in the complaint that Isaac N. Williams died on 28th February, 1874, intestate, and on the 25th March, 1874, the plaintiffs were duly appointed administrators of his estate; that "on or about the 2d April, 1884, said plaintiffs, as such administrators, were lawfully possessed of certain goods and chattels, the property of the estate of the said Isaac N. Williams, deceased," consisting of a quantity of ice, three horses, three ice wagons, two harnesses, a frame building used as an ice-house, pair of bobs and rack, a straw-cutter, and several other articles used in connection with the ice business, and a quantity of sawdust; and that on about the 2d April, 1884, the defendants converted this property to their own use. It is also alleged that on or about 15th January, 1885, the plaintiffs were in like manner possessed of certain other property of said estate, consisting of a quantity of ice and a lease of a mill-pond given by one Sillenbeck to the plaintiff H. C. Kenyon, and that at the date named the defendants converted the same to their own use. Isaac N. Williams at the time of his death was engaged in the ice business at Rome. He left a widow, the plaintiff Nancy H. Williams, and several children, all then minors. Mr. Kenyon is the father of the widow. Kenyon upon his appointment made an inventory of the estate. This is dated April 15, 1874, and shows ice to the value of $700, and other property to the amount of about $200. The ice was stored in an ice-house that belonged to Williams, and which was on land of which Williams had a lease which had four years to run when he died. Neither the ice-house nor lease were in the inventory. After the appointment of the administrators, Kenyon, at the request of his co-administrator, and with the help of two of her sons for most of the time, carried on the ice business in his own name for about 10 years, and down to the time of the alleged conversions. The ice on hand at Williams' death was peddled out, the horses and wagons and tools which he had being used, and each season thereafter a crop of ice was gathered and used in the business. Mrs. Williams and her family lived out of the business, and the debts of the estate were paid or compromised. The administrators had no judicial accounting. The lease referred to covered an ice-

pond, and when the lease expired it was renewed by Kenyon in his own name. There was another renewal in May, 1881, which is the one referred to in the complaint.

At the trial it appeared that some of the articles which the plaintiffs sought to recover had been sold by the plaintiff Kenyon directly to the defendant Burt Olney, and for which Kenyon received from Olney his pay in full, and the other defendants had nothing to do with the transaction. These, it was held, the plaintiffs could not recover for, as there could be no separate judgment against one defendant. It is very clear that after a sale by one administrator, and payment in full of the price, no fraud or collusion being charged, the administrators cannot maintain conversion. As to the balance of the property, the alleged conversions were through sales upon foreclosure of chattel mortgages given in 1883 and 1884 by Kenyon individually to the defendants W. R. Olney and Kinney, to secure them for indorsements to enable Kenyon to raise money to carry on the ice business. There was no evidence showing the foreclosure sales improper, assuming the power to sell existed. The defendant Burt Olney was the purchaser at the sales. Of the property so sold, one horse, one ice-wagon, and a straw-cutter were in existence at the time of the death of Williams and part of his estate as inventoried. All the other property sold was what was made or accumulated in the ice business, the main item being the ice, and that was of production of the years 1884 and 1885. As to the latter class, the main ground of nonsuit was that, as it was not in existence at the death of the intestate, but was the product or result of one of the administrators carrying on the business in his own name, the administrators, as such, had no such title or possession as would enable them to maintain conversion. In this we think the court did not err. It is well settled that debts contracted by an administrator in continuing the business of the intestate would not bind the estate. *Willis* v. *Sharp*, 113 N. Y. 591, 21 N. E. Rep. 705, and cases cited; 3 Williams, Ex'rs, (6th Amer. Ed.) 1891. Nor would the product belong to the estate. The title or possession would not be in the estate, but in the party who ran the business. It is true that in such a case, if profits were made, the administrator might be made to account for them. 3 Williams, Ex'rs, 1890. But the right to an accounting for profits is one thing, and the right to take the product as owner, without reference to the question of profits, is an entirely different matter. The doctrine of confusion of goods does not apply. The case of *Williams* v. *Kinney*, 43 Hun, 1, is materially different from the present case. It may be that any benefit that Kenyon derived from the renewal of the lease might be reached by the parties interested in the estate, but it would not follow that the estate as such became the owner of the lease, and could sue for its conversion. The estate was not liable for the rent due under it.

As to the three items which were in existence at the death of the intestate, there are some other things to be considered. These were a part of the estate, and a recovery for them would be assets. In such a case, the administrators had a right to bring the action in their representative capacity, although the conversion was in fact after their appointment. 2 Williams, Ex'rs, 947. The fact, therefore, in this case, that the conversion was after the appointment of the plaintiffs, will not justify the nonsuit. Other grounds, however, were taken. The sale was with the express assent of Kenyon, one of the administrators, and the other knew of the mortgages before the sale, and did not object to the sale. The proceeds of the sale were accounted for to Kenyon in discharge of obligations incurred by him in conducting the business for the benefit of the parties interested in the estate. He represented that he was the owner of the property. There is no evidence to show that the defendants knew that any of it was a portion of the original assets of the estate, or that Kenyon was disposing of it in violation of any trust. They knew that Kenyon was in possession of the property, and had been carrying

on the business for about 10 years in his own name, and that Mrs. Williams and her family were interested in it. The mortgages were in aid of the business. Ordinarily, the acts of one administrator bind the estate. Had Kenyon directly sold this property to the purchaser upon the sales, and received the proceeds, it would hardly be claimed that conversion would lie. Substantially that is what he has done in this case through the mortgages. An administrator for some purposes has a right to pledge or mortgage property in his hands. 2 Williams, Ex'rs, 1000; *Wheeler* v. *Wheeler*, 9 Cow. 34. In *Poole* v. *Munday*, 103 Mass. 174, it was held that an administrator may be allowed in his account for inventoried property which he has spent or consumed in carrying on in good faith, by the request of all parties interested in the estate, the business of the intestate after his death. There, as here, there were no creditors, and there were a widow and minor children. The case of *Wetmore* v. *Porter*, 92 N. Y. 76, is relied on by the plaintiffs. In that case it was held that whoever receives property knowing that it is a subject of a trust, and has been transferred by the trustee in violation of his duty or power, takes it subject to the right, not only of the *cestui que trust*, but also of the trustee, to reclaim possession or to recover for its conversion. We think the plaintiffs have not made a case that brings them within the rule of that authority. Upon the whole, we are of the opinion that the nonsuit should not be interfered with, and that the judgment should be affirmed. Judgment affirmed, with costs. All concur.