---

In the Matter of the Judicial Settlement of the Accounts of THOMAS J. MULLON and Another, as Administrators, etc., of JOHN MULLON, Deceased.

*Accounting in Surrogate's Court — surcharge of inventory — burden of proof — devastavit — liability of administrators who are also residuary legatees — the business of the decedent carried on by his administrators — the good will thereof, an asset — omission of assets from inventory — value thereof must be proved — sale of nonperishable property — mingling of property of the estate with property of the administrators.*

The inventory of an estate filed in a surrogate's office presumptively contains a true and full account of all the personal property of a testator, and is to be so considered in all subsequent proceedings before the surrogate until the contrary affirmatively appears.

The burden of proof rests with a party seeking to surcharge an inventory, either as to the amount or value of the property of the deceased.

Upon the settlement of administrators' accounts they are to be charged with the amount of the inventory, all increase thereon, and all personal property of the deceased which may be proved to have come into their hands subsequently to the making of the inventory.

It rests with the party objecting to establish more assets than are acknowledged by an administrator's account or inventory, and the proper practice is to state the objection in the form of a distinct and specific allegation, and to give proof thereof.

The fact that there were more assets than are acknowledged by an inventory and account must be established with reasonable certainty and not left to mere conjecture or suspicion. Not only must the omissions from the inventory be charged, but the correctness of the charge must be proved, and the value or amount of such alleged omission.

Where the residuary legatees and devisees named in a will are also the administrators with such will annexed, they are not guilty of a *devastavit* of the estate by reason of their having taken it in their own names, and having paid the value thereof, as fixed by the inventory filed, and the value of all additions

made to the same by newly discovered property, on the valid debts and liabilities of the testator.

The measure of the administrators' liability on a judicial settlement is the value of the property inventoried and the value of such property belonging to the estate as has come to their hands, with which they had not charged themselves in the inventory, and the amount of claims, made against the estate and paid by them, which they were not legally authorized to pay.

They may take such assets as their own property, and will not be accountable to the estate for their earnings or accumulations in conducting the business assumed by them, nor can they charge any loss in the conduct of the same against the estate on their final judicial accounting.

Where the business of a testator is carried on by his administrators, the good will of such business becomes an asset in the hands of such administrators, and its value, if proved, may be charged against them upon their accounting.

Executors and administrators are not required to sell non-perishable goods unless the will so provides, or it be necessary to do so to enable them to pay the debts and legacies, and they should not, on their final accounting, be charged with interest upon the value of property not sold; nor where they are residuary legatees should they be charged with the use of property which they have taken as their own and paid the estate for, at more than its inventoried price. Neither, when they do take property under such circumstances, and mingle it with their own, should they be held to have forfeited their own property, which never belonged to the estate.

If a trustee or administrator mingle trust funds with his own and use the mixed fund in his own business, he will be charged with interest, even though he make no profits out of such use.

APPEAL by Thomas J. Mullon and another, as administrators, etc., of John Mullon, deceased, from a decree of the surrogate of the county of Albany, entered in the Albany County Surrogate's Court on the 25th day of May, 1893, settling and determining their accounts as such administrators, with the will annexed, of John Mullon, deceased, and directing said administrators to pay a judgment in favor of William Bayard Van Rensselaer, as trustee for Laura Van Rensselaer, against them amounting to $3,811.70, with interest thereon from October 5, 1892, which is the deficiency upon the foreclosure of a mortgage executed by said John Mullon in his lifetime.

John Mullon, the father of Thomas J. and Jacob H. Mullon, died at the city of Albany, N. Y., on the 15th day of August, 1886, leaving a last will and testament, which was duly proved and admitted to probate by the surrogate of the county of Albany on the 6th day of September, 1886.

On the 29th day of September, 1886, letters of administration, with the will annexed, upon the goods, chattels and credits of said deceased, were issued by said surrogate to Thomas J. Mullon and Jacob H. Mullon, who duly qualified and entered upon the discharge of their duties as such administrators.

On the 9th day of October, 1886, said administrators, with the aid of Lawton F. Polhemus and S. Durbonon Smith, duly appointed and sworn as appraisers, after giving due notice of the same, made an inventory of the personal property and effects of said deceased.

Said inventory was duly filed in said surrogate's office on the 20th day of October, 1886.

The said personal property amounted by appraisement, by said duly appointed appraisers, to the sum of $9,426.20.

The mortgage, upon the foreclosure of which this judgment for deficiency was obtained, was executed by said John on the 9th day of November, 1881, to secure the payment of the sum of $6,000 in five years from the date thereof.

On the 30th day of March, 1887, said administrators caused a notice for claimants to present their claims against the said estate to them within the period fixed' by law, and at a certain place therein specified, to be published in a newspaper according to law for six months.

Said administrators disputed no claims which were presented, but paid every claim against said estate which was presented to them.

No claim against said estate was ever presented to said administrators by said William Bayard Van Rensselaer, as trustee, in pursuance of the notice to creditors published as aforesaid, and no claim was made by said Van Rensselaer until after the docketing of said judgment, on the 5th day of October, 1892.

The testator conducted an ice business in the city of Albany for a long time prior to his death, and the two administrators were his sons and the sole residuary legatees under his will.

After his death, said administrators, who were the owners of the property, took the same into their possession and used it in conducting the ice business in the city of Albany.

*John A. Stephens*, for the administrators, appellants.

*Marcus T. Hun*, for the petitioner, respondent.

MAYHAM, P. J. :

William B. Van Rensselaer, as trustee for Laura Van Rensselaer, a creditor of John Mullon, filed his petition with the surrogate, praying that the administrators of John Mullon, deceased, render their accounts, and make a judicial settlement of the same, and on the return of the citations issued by the surrogate on such petition the administrators appeared and filed their petition for a final judicial settlement before such surrogate. On such petition citations were issued to persons interested in the estate of deceased, on the return of which the administrators filed their accounts.

By said accounts they show that letters of administration with the will annexed were issued to them September 29, 1886, and that on the 20th day of October, 1886, they caused an inventory of the estate, made by them with the aid of appraisers appointed by the surrogate, to be filed in his office, by which it appeared that the amount of the testator's personal estate was $9,426.20.

The administrators on such accounting credit themselves by the amount of several schedules, consisting of loss on the inventory, funeral expenses, claims against the estate presented to the administrators and allowed and paid by them, moneys paid to legatees named in will, amounting in the aggregate to the sum of $11,747.72, from which statement it appears that they had paid out on account of the estate $2,321.52 more than they had received, for which they claimed the estate was in debt to them.

The petitioner, William B. Van Rensselaer, surcharged the inventory filed on this accounting, and objected to many of the accounts allowed by the administrators.

I find no proof or finding that the inventory did not contain a full and complete list of all the articles of personal property owned by the testator at the time of his death which came to the hands of the administrators, except the inference which is sought to be drawn from the fact that the property sold by them to Sherman was worth $20,250. There is no proof that the property was undervalued in the inventory, or that any article was left off except what is now claimed to be the value of the good will of the business, nor does the learned surrogate find that any article of personal property of the testator was omitted from the inventory or undervalued in it.

Presumptively, the inventory contained a true and full account of all of the personal property of the testator. In *Forbes* v. *Halsey* (26 N. Y. 60) DAVIES, J., in discussing the effect which is to be given to an inventory duly filed in the Surrogate's Court, on subsequent proceedings in that court, says: " Such inventory may be regarded as the basis of their subsequent action, and is to be considered in all subsequent proceedings before the surrogate at least until the contrary affirmatively appears to be a true and perfect inventory of all the goods, chattels and credits of the intestate. * * * The amount of personal property, therefore, which comes to the hands of the administrators will be assumed to be the amount of the inventory as returned and filed." The party seeking to surcharge the inventory, either in the amount or value of the property of the deceased, has the burden of proof.

It is true that on settlement of administrators' accounts they are to be charged with the amount of the inventory and all increase on the same, and all personal property of the deceased which may be proved to have come to their hands subsequently to the making of the inventory. (McClellan on Executors, 67.) In *Bainbridge* v. *McCullough* (1 Hun, 488) it was held that it rests with the party objecting to establish more assets than are acknowledged by the accounts or inventory (citing *Marre* v. *Ginochio*, 2 Bradf. 165); and it was held to be the proper practice to state the objection in the form of a distinct and specific allegation, and give proof thereof.

But the respondent insists that the articles enumerated in the bill of sale to Sherman of February 27, 1893, are to be taken as the articles coming into the hands of the administrators on the 26th of September, 1886, the time when they were appointed administrators; and the learned surrogate seems to adopt that theory, and relies upon that bill of sale for the evidence on which to surcharge the inventory, and that, too, without any evidence in detail as to the value of the articles sold to Sherman, that value in the bill of sale being given only in the gross sum paid on such sale, and in the face of proof that many of the articles sold to Sherman were new, and were not among the assets of testator at the time of his death, but were purchased by the appellants while carrying on the business.

If this business was carried on by the appellants as administrators, and they at the time of the sale to Sherman held this property as

such, then it is quite clear that they could be compelled to file an inventory of the newly acquired goods, or the contestant could surcharge their account to the extent of the profits on the business, but the title or possession of the newly acquired goods would not be in the estate (*Kenyon* v. *Olney*, 15 N. Y. Supp. 417), and they could not properly be charged in their accounts with such new articles.

The learned surrogate does not find that they were carrying on the business as administrators, but finds that they were carrying on the business while they were administrators.

This seems to us to fall far short of finding that they carried on this business as administrators. The case shows that the appellants assumed to carry on the business as individuals in their own names and not as administrators, and the bill of sale to Sherman is in their own names; and while the surrogate does not in terms find that they carried on the business as administrators, he refuses to find, on appellants' request, that they carried on the business in their own names and not as administrators.

There was no authority in the will for continuing the business in the names of the executors or of the administrators with the will annexed, and we think the testimony in this case, together with the manner in which the appellants did in fact conduct the business, authorized a finding that they carried on the business in their own names and not as administrators.

This method of conducting the business was not inconsistent with the terms of the will, as by its terms they were the sole residuary legatees and devisees in this will after the payment of debts and legacies.

As residuary legatees, we think the administrators were not guilty of a *devastavit* of this estate by taking it in their own names and paying the full value of the estate as fixed by the inventory filed, and all additions that can be made to the same, by newly discovered property, on the valid debts and liabilities of the testator.

In such a case the measure of their liability on a judicial settlement would be the value of such property as had come to their hands belonging to the estate which they had not charged themselves with in the inventory, and the amount of claims made against the estate and paid by them, which they were not legally authorized to allow and pay out of the estate, and the executors or administrators

would take the assets as their own property and would not be accountable to the estate for their earnings or accumulations in conducting the business so assumed by them and in which they employed such property, nor could they charge any loss in the conduct of the same against the estate on their final judicial accounting. (*Blood* v. *Kane*, 130 N. Y. 517.)

There is no specific allegation in the objection filed by the respondent to the accounts of the administrators, that the inventory does not state or contain a credit to the estate of the proceeds of the business conducted by appellants after the death of the testator. Nor is there any evidence in the case from which such proceeds can be ascertained, if they were properly chargeable against the administrators in their account, sufficient to sustain the second conclusion of law found by the surrogate.

There is no proof of the value of the services of the appellants in producing such proceeds. Nor did the issue raised by the contestant call upon them to introduce evidence upon that point. Indeed, a finding upon that point would seem to be inconsistent with the charge found in the seventh finding of law, which seeks to charge the administrators with the good will of testator's business. (*In re Randell's Estate*, 8 N. Y. Supp. 652, and cases there cited.) These cases, while they seem to hold that the profits or proceeds of the business conducted in their own names by the persons who are at the time the personal representatives, cannot be credited to the estate, and such representatives at the same time be charged with the value of the good will of the testator's business, for the obvious reason that such charges would be inconsistent with each other, yet they seem to be authority for charging the administrators with the value of such good will where they have adopted the business as their own. In such case such good will becomes an asset in the hands of the administrators, and its value, if proved, may be charged against them in their accounts.

But, as we have seen, the burden of surcharging the inventory with the value of such good will, where it is not on the original inventory, is with the contestant, and before any allowance for it can be made by the surrogate, its existence and value must be proved by him, as well as its appropriation or sale by the administrators.

In *Marre* v. *Ginochio* (2 Bradf. 165) it was held that upon an accounting the affirmative, of establishing more assets than are acknowledged by the inventory and account, is with the party objecting ; and it must be established with reasonable certainty, and not left to mere conjecture or suspicion. (*Forbes* v. *Halsey*, 26 N. Y. 60, 61 ; *Bainbridge* v. *McCullough*, 1 Hun, 488 ; *In re Randell's Estate*, 8 N. Y. Supp., *supra*.)

The contestant was called upon before a decree could be made in his favor upon this point, not only to charge in his objections such omissions in the inventory, but to prove the correctness of the charge, and the value or amount omitted from the inventory. (*Matter of Hart*, 60 Hun, 516 ; *In re Johnston*, 15 N. Y. Supp. 239.) This, it seems to me, he failed to do. It is true that the surrogate, in the summary statement in his decree, charges the administrators with $13,668, as the gross value, not stated in the inventory, of articles taken by the administrators, and used by them in conducting the business after testator's death.

But it does not appear how that amount is proved except that the property was sold by appellants to Sherman for $20,000, and the inventory value of the articles received by the administrators from the estate was $6,682, showing either that the appellants had added to the value of the property which the surrogate charges to them, $13,668, or perhaps that the value of the good will is represented by that amount.

Neither hypothesis seemed to us to be supported by proof, and both stand, if at all, upon conjecture. We do not think that the rights of these parties should be disposed of in that manner.

The surrogate finds that the administrators paid out on account of this estate $2,103.68 more than the inventory value of property which came to their hands, and yet, as appears from the summary statement, he finds still in their hands due the estate $11,470.38, out of which the surrogate directs the administrators to pay to the contestant the sum of $3,811.70 and interest, and directs a judgment in form to be docketed against them for that amount. The ground upon which this decree and judgment seems to be predicated is that the appellants did not sell and dispose of the property which came into their hands as administrators, but that they appropriated it to their own use, and mingled it with their own property, and that by

such use and commingling they forfeited to the estate, not only the time and labor bestowed upon it during the period of over five years, during which the appellants managed this property as their own, but also all the articles and improvements added by them, and that they must now account for its present value, together with the price at which it was inventoried at the time that they took possession of it.

As we have seen, the taking of this property by the administrators and appropriating it to their own use, under the circumstances of this case, was not a *devastavit* of the estate so long as they paid the testator's debts and legacies.

In *Greeno* v. *Greeno* (23 Hun, 478) it was held, RUMSEY, J., writing the opinion of the court, that executors and administrators are not required to sell non-perishable property unless the will so provides, or it be necessary to enable them to pay the debts and legacies, and they should not on their final accounting be charged with interest upon the value of property not sold.

It is true that this case discussed the general duties of such officers. But for a much stronger reason they should not be charged with the use of property which they have taken as their own and paid for to the estate at its inventory price, and more, as in this case.

Nor, when they take property under such circumstances and mingle it with their own, should they be held to have forfeited their own property, which never belonged to the estate.

The doctrine of confusion of goods does not go to that extent and has no application to such a case, and any property bought by the administrators would belong to them personally and not to the estate, even if they had assumed to carry on the business in the name of the estate, which in this case they did not.

In *Kenyon* v. *Olney* (15 N. Y. Supp. 416) MERWIN, J., says: "It is well settled that debts contracted by the administrators in continuing the business of the intestate would not bind the estate. * * * Nor would the product belong to the estate. The title or possession would not be in the estate but in the party who ran the business."

In *Willis et al.* v. *Sharp* (113 N. Y. 591) ANDREWS, J., says: "It is the settled doctrine of the courts of common law that a debt con-

tracted by an executor after the death of his testator, although contracted by him as executor, binds him individually and does not bind the estate which he represents."

It is true that the rule in equity is, that if the trustee or administrator mingle trust funds with his own and use the mixed fund in his own business, he will be charged with interest even though he make no profits out of such use. (*Utica Insurance Co.* v. *Lynch*, 11 Paige, 520.) But we are cited to no case where the mingling of goods will work a forfeiture of the executor's or administrator's property to the estate . of the deceased, as is held by the learned surrogate in his thirteenth finding and conclusion of law.

It is insisted by the appellants that having advertised for creditors for the time required by law, they are justified in assuming that all valid claims had been presented, and that they were authorized to exhaust the assets in paying such claims in full; and having done so before any judgment in favor of the contestant was docketed, and no claim on such demand or judgment having been presented to them pursuant to said notice, they cannot now be charged as administrators with the payment of such judgment, there being no unadministered assets in their hands out of which it can be paid.

In *In re McEvoy's Estate* (3 N. Y. Supp. 337) it was held that an executor was not liable personally   *   *   *   to a creditor who did not present the claim, which was for a deficiency on a subsequently foreclosed mortgage, and of which claim neither the executor nor residuary legatee had notice until after the estate was distributed.

If we are right in the conclusion at which we have arrived, that as residuary legatees these administrators could lawfully take and hold these assets on paying the debts and legacies to the full amount of the property coming into their hands as measured by the inventory, and that the contestant has failed to increase that liability by surcharging the inventory, or by proof increasing the amount of the estate which came to the hands of the administrators beyond the amount embraced in the inventory, then the appellants, after having paid the entire amount charged against them by the inventory, cannot be made personally liable for the amount of the contestant's judgment.

We think the decree of the surrogate should be reversed, and a

new trial or hearing had before the surrogate of Albany county (Code, § 2587), costs of this appeal and of the retrial to abide the event.

PUTNAM, J., concurred.

Decree of surrogate reversed, new hearing or trial granted before surrogate, costs of this appeal and of the retrial to abide the event.