charge of the court, as there was evidence sufficient to support a finding that the pavement was in bad repair and condition through the negligence of the three defendants, and that the hole or depression, as it originally existed, was the cause of the accident. We see no occasion to disturb the judgment.

The jury found a verdict for $8,750, which was reduced by the court to $5,000. Inasmuch as the court wisely exercised its discretion in this respect, we are not disposed to overrule its decision by making a further reduction. The judgment should be affirmed.

Judgment and order affirmed, with costs.

---

(58 App. Div. 583.)

### In re ARKENBURGH'S ESTATE.

(Supreme Court, Appellate Division, Second Department.   March 8, 1901.)

1. EXECUTOR'S CLAIMS AGAINST THE ESTATE—PROOF—SATISFACTION.

Code Civ. Proc. § 2731, provides that on judicial settlement an executor may prove any debt owing to him by the decedent, and that, where a contest arises between him and other parties interested, it must be tried in the same manner as any other issue arising in the surrogate's court. Rev. St. (8th Ed.) p. 2561, § 33 (Code Civ. Proc. § 2719, subd. 4), declares that an executor shall not satisfy his own claim out of the property of the deceased until proved to and allowed by the surrogate. *Held*, that a charge on the books of the decedent against the executor must be charged against the latter on his accounting, unless his claim of services rendered before decedent's death to offset such charge is proved by legal evidence, and the burden is on the executor to prove such claim.

2. SAME — WITNESS' AGREEMENT WITH DECEASED — CONCLUSION FOUNDED THEREON.

Under Code Civ. Proc. § 829, declaring that on the hearing on the merits of a special proceeding a person interested in the event shall not be examined as a witness in his own behalf against a person deriving his title from a deceased person concerning a personal transaction between the witness and the deceased, unless such transaction is referred to by the other party, it was error to permit an executor to testify that every item in an account against him in decedent's books, which were introduced in evidence by the opposite parties, represented money paid him for services rendered, where the conclusion contained in such testimony was manifestly based on an agreement between the executor and the deceased.

3. SAME—COSTS.

Where there was a contest between an executor and certain legatees as to whether a certain amount charged against the executor on decedent's books should be considered as assets of the estate, it was proper that the costs of both parties should be taxed and paid out of the estate.

Appeal from surrogate's court, Rockland county.

Judicial settlement of the account of Eliza J. Arkenburgh as executrix and Oliver M. Arkenburgh as executor of Robert H. Arkenburgh, deceased. From a decree refusing to charge certain items against Oliver M. Arkenburgh, and from an order denying a motion to vacate or modify such decree, certain legatees appeal. Reversed.

Argued before GOODRICH, P. J., and WOODWARD, HIRSCHBERG, JENKS, and SEWELL, JJ.

Charles E. Souther, for appellant legatees.

R. Forsyth Little, Jr., for respondent executor.

GOODRICH, P. J. ·This appeal from a decree of the surrogate of the county of Rockland, and also from an order refusing to vacate or modify such decree further than he had modified it, is the second appeal from the surrogate in such proceeding.   On the former appeal (38 App. Div. 473, 56 N. Y. Supp. 523) we affirmed the decree of the surrogate, except as to an item of $26,530.66, which he had refused to charge against ·Oliver M. Arkenburgh, the executor respondent. The surrogate admitted the evidence of Oliver as to an agreement made at an interview between him and his father that Oliver should be compensated for services in the business by paying him enough to maintain him in the manner in which he had been brought up.   We held that there had been no testimony offered by the contestants which had "opened the door" so as to justify the admission of the testimony in relation to that interview.   We decided that there had been error in the admission of this evidence, and for this error reversed the decree so far as this item was concerned, and remitted the proceedings to the surrogate for a further hearing on this branch of the case. Such further hearing was had before the surrogate, and by his decree he again decided that this item should not be charged against Oliver, nor reckoned with the surplus, nor be distributed as part of the testator's personal property.   The facts in regard to this item were fully stated in the opinion on the former appeal, and the question is whether the learned surrogate erred in admitting the testimony of Oliver, the same having been objected to as incompetent, under section 829 of the Code of Civil Procedure.   The learned surrogate held that the burden of proof was on the contestants to show that this balance item was chargeable against Oliver, and in his opinion cites three cases to support his ruling.   It is true that it was held in the several cases thus cited that the inventory of an estate filed with the surrogate on accounting presumptively contains a true and full account of all the personal property of the testator, and is to be so considered in all subsequent proceedings before the surrogate, until the contrary appears, and that the burden of proof rests with a party seeking to surcharge such ·inventory either as to the amount or value of the property of the deceased.   In re Mullon, 74 Hun, 358, 26 N. Y. Supp. 683; Forbes v. Halsey, 26 N. Y. 53, 61.   But in the third case it was held that the individual claim of an executor stands on a different basis, and that he is bound to establish his claim by legal evidence.   In re Stevenson, 86 Hun, 325, 33 N. Y. Supp. 493; Kyle v. Kyle, 67 N. Y. 400, 408.   The correctness of this position is shown by section 2731 of the Code of Civil Procedure, which provides that on a judicial settlement the executor may prove any debt owing to him by the decedent, and that, where a contest arises between him and other parties interested, the contest must be tried in the same manner as any other issue arising in the surrogate's court.   It is also provided that no part of the property of the decedent shall be retained by the executor in satisfaction of his claim until it shall have been proved to and allowed by the surrogate.   4 Rev. St. (8th Ed.) p. 2561, § 33. This brings us to the consideration of the evidence introduced at the last hearing, where it appeared that Oliver had kept the account books of his father, which were put in evidence by the contestants for

the purpose of showing the indebtedness of Oliver to his father by the entry in his own handwriting of the item above referred to as a balance against himself; and this was the only evidence on the subject offered by the contestants. On cross-examination, the following occurred:

"Q. Now explain the items of the account (identifying them). (Objection was made that 'any explanation involved a personal communication or transaction with the decedent,' and the objection was overruled, and an exception was taken.) Q. We want you to explain these items, and tell what those items appearing upon those pages were for,—what they were. I want you simply to tell what those items represent. By the Court: Where the entry itself does not show what they were for? By Mr. Tompkins: Yes. A. Every item in the account on those pages represents moneys paid me for services rendered. Q. Paid to you by your father? A. Yes, sir. Mr. Brown: Objected to as incompetent and inadmissible, under section 829 of the Code, and also that the witness' claim against the ledger charges is in the nature of a debt, if anything, and that to establish it a proof of claim must have been presented and allowed. (The last question withdrawn by Mr. Tompkins.) Mr. Brown: Exception."

The testimony is not open to the exact and specific objection pointed out by us on the former appeal. Such former testimony was entirely independent of the account, and there had been no evidence which justified its admission. The testimony at the last trial, above cited, related to the accounts which had been introduced by the contestants. We have, then, the question whether it was error to permit Oliver to explain the account which had been put in evidence by the contestants. The real difficulty arises from the fact that his answer that the item represents moneys paid for services rendered by him to his father was a conclusion which must have been based on an implied contract or the existence of an express contract between his father and himself to pay that amount for his services. No such services were proved on the last hearing, and so there were no facts from which a contract could be implied. On the other hand, there is no evidence of any express contract. Taking into consideration the facts set out in our former opinion, it is manifest that the witness had in mind the agreement with his father, as to which he testified on the former trial; and his conclusion—for it is nothing else—that the item represented "money paid for services rendered" necessarily involves testimony of communications and transactions between the witness and the deceased, and therefore ought not to have been admitted. Indeed, I think it more offends the spirit and purpose of section 829 than did the testimony which, in our former opinion, we declared to be incompetent; for, while it may apparently adhere to the letter of the rule, it permits the witness to deduce a conclusion as to the effect of a conversation with his father; and, if the objection had been made that the answer was a conclusion, I have no doubt that the learned surrogate would have excluded the evidence or stricken out the answer, as he ought to have done. It was said in Van Slooten v. Wheeler, 140 N. Y. 624, 633, 35 N. E. 583:

"Public policy requires that claims against the estates of the dead should be established by very satisfactory evidence, and the courts should see to it that such estates are fairly protected against unfounded and rapacious raids."

Since the argument of this appeal the court of appeals, in Re Mar-
cellus, 165 N. Y. 70, 58 N. E. 796, has delivered an opinion which
reiterates the doctrines announced in Van Slooten v. Wheeler, using
language which affords additional confirmation of the views which I
have expressed, and suggests a new reason for reversal of the sur-
rogate's decree, which was based solely on the testimony of Oliver.
The court said (page 76, 165 N. Y., and page 798, 58 N. E.):

"Practically the only evidence in the case was the testimony of the claimant
himself, who was a vitally interested witness. Therefore the question of his
credibility was presented for the surrogate to pass upon. He was not com-
pelled to find in the appellant's favor simply because he had testified to mat-
ters more or less improbable, which tended to establish his claim, especially
where, if all to which he testified was found true, it was insufficient to require
a decision in his favor. Public policy required that his claim against the estate
he represented should be established by very satisfactory evidence; and it
was the plain duty of the surrogate, in the absence of such proof, to reject it.
Van Slooten v. Wheeler, 140 N. Y. 624, 633, 35 N. E. 583. The evidence in this
case fell far short of being sufficient to require an allowance of the appellant's
claim, and the decision of the learned surrogate disallowing it was properly
affirmed by the court below."

In Rix v. Hunt, 16 App. Div. 540, 545, 44 N. Y. Supp. 988, 992, it
was said:

"Where claims are presented against a deceased party, it is unquestionably
well settled by repeated adjudications that the same should be scrutinized with
even more than ordinary care in order to prevent, as far as possible, the allow-
ance of unjust and fictitious demands against parties whose mouths are
sealed by death."

This evidence being excluded, the question arises, what evidence
has been produced by Oliver to establish his claim. The books kept
by him show an account entitled "O. M. Arkenburgh," commencing
January 9, 1878, and ending September 30, 1890, and the balance char-
ged against him was $26,530.66. We need not examine the account
prior to June 20, 1888, as there is in evidence a written settlement of
that date between Oliver and his father, by which the amount due
Oliver for his services was adjusted at $7,789.74, and that sum cred-
ited to him in the account. In December, 1888, and December, 1889,
there is a specific credit of $5,000 for services for the closing year,
and in September, 1890, a proportional charge for nine months' serv-
ices. It is true that the will, dated February 26, 1889, contains a
provision that "the only advancements which have been made to any
of my children up to and at the date of this, my will, are such as
have been made to my son, Robert H. Arkenburgh"; but, in order to
bring this item within the term "advancement," it was necessary that
Oliver should prove that it was intended by the testator as an ad-
vancement. There is no such evidence. Nor does Oliver claim that
it was an advancement, but that it was in compensation of his serv-
ices for his father. There is, then, no evidence that the item in ques-
tion is a just claim against the estate of the deceased, but, on the
contrary, the entry in the handwriting of Oliver, unexplained by him,
is evidence that it is a just claim against him, and a part of the fa-
ther's estate.

Section 2586 of the Code of Civil Procedure confers upon this court,
where an appeal is taken upon the facts, the same power which the

surrogate had to decide the question of fact. As the question of the liability of Oliver to the estate has been twice considered by the surrogate, I think the matter should be remitted to him, with instructions to enter without further hearing a final decree in accordance with this opinion, with costs to the appellant of this appeal. The appeal from the order denying the motion to vacate or modify the decree relates chiefly to the allowance by the surrogate of costs to Oliver out of the funds of the estate. Under the circumstances it is proper that the costs of both parties should be taxed and paid out of the estate. All concur, except SEWELL, J., taking no part.

(59 App. Div. 145.)

McCARTHY v. RITCH et al.

(Supreme Court, Appellate Division, Second Department. March 8, 1901.)

1. MASTER AND SERVANT—SERVANT'S INCOMPETENCY—ADMISSION OF EVIDENCE —SPECIFIC ACTS—GENERAL REPUTATION.

In an action against a master for his servant's negligence, after proof was given of specific acts of such servant showing incompetency, admission of testimony as to the servant's general reputation for competency in his line of work was error.

2. SAME—INSTRUCTIONS—ERROR NOT CURED.

In an action against a master for his servant's negligence, an instruction that testimony as to the servant's general reputation for unskillfulness should be considered only as tending to show that the master was chargeable with knowledge of such defect in his servant did not cure the error of admitting such testimony.

Appeal from trial term, Westchester county.

Action by William J. McCarthy against William T. Ritch and others. From a judgment in favor of plaintiff, defendants appeal. Reversed.

Argued before GOODRICH, P. J., and WOODWARD, HIRSCHBERG, JENKS, and SEWELL, JJ.

L. Laflin Kellogg, for appellants.
William L. Snyder, for respondent.