In the Matter of the Estate of LUCINDA ROGERS, Deceased.
In the Matter of the Estate of WILLIAM ROGERS, Deceased.

1. EXECUTORS AND ADMINISTRATORS — ACCOUNTING UNDER CODE CIV.
PRO. § 2606 — STATUTE OF LIMITATIONS. A proceeding by an adminis-
trator *de bonis non,* as such, to compel the representative of his deceased
predecessor to account in Surrogate's Court, under section 2606 of the
Code of Civil Procedure, is controlled by the ten years' Statute of Limi-
tations applicable to suits in equity; and this is so, notwithstanding the
facts that the administrator *de bonis non* is the next of kin of his deceased
predecessor, and that such a proceeding would be controlled and barred
by the six years' statute if instituted by him as next of kin.   '

2. APPEAL — FINDING WITHOUT EVIDENCE. Upon appeal from an
affirmance by a late General Term of the decree of a Surrogate's Court in
a proceeding for an accounting under section 2606 of the Code of Civil
Procedure, the presence, under exception, of an essential finding made
without the support of any evidence, in a case containing all the evidence,
presents an error of law which it is the duty of the Court of Appeals to
correct.

*Matter of Rogers,* 92 Hun, 609, reversed.

(Argued May 13, 1897; decided June 15, 1897.)

APPEAL by Pliny T. Sexton, as executor of the last will
and testament of Lucinda Rogers, deceased, from a judg-
ment of the General Term of the Supreme Court in the fifth
judicial department, entered January 22, 1896, which affirmed
a decree of the surrogate of Wayne county.

These proceedings were commenced on the 27th of July,
1891, by Ruth E. Moore, as administratrix *de bonis non* of the
estate of William Rogers, deceased, to compel an accounting
by Pliny T. Sexton, as executor of the last will of Lucinda
Rogers, deceased, and to require him, as such, to pay over to
her, as such, that portion of the estate of William Rogers that
was left unadministered by Lucinda Rogers. Upon the return
day of the citation Mr. Sexton appeared as executor and asked
that his accounts in that capacity might be judicially settled,
and that a citation issue accordingly. Upon the return day of
that citation he filed his accounts in two parts, the first relat-
ing to " the property which was of, or belonging to the estate

of the said William Rogers," and the second, to "the property which is in, or has come to his hands as such executor of Lucinda Rogers." Objections having been made by Mrs. Moore to both parts of the account, the issues thus joined were tried before the surrogate. Upon the trial it appeared that on the 18th of May, 1874, William Rogers died intestate, leaving a widow, Lucinda Rogers, and Ruth E. Rogers, then aged 13, his only child. On the 8th of July, following, Lucinda Rogers was appointed administratrix of her deceased husband, and on the 20th of October, 1875, she filed an inventory, but she never rendered any official account of her administration of said estate. On the second of January, 1885, she died leaving a will by which, after bequeathing a legacy of $900 to one Gifford, she gave to her daughter Ruth all her wearing apparel, household furniture and personal ornaments. The rest of the will, so far as material to this controversy, is as follows:

"3. I will and bequeath to my said daughter the use, during her lifetime, of the rest and residue of all my personal estate after the payment of my funeral expenses. And I direct that upon the death of my said daughter said property shall go absolutely to my only grandchild now living, but should other children be born to my said daughter, then said property shall be divided between them, share and share alike." She appointed Pliny T. Sexton her executor, and authorized him "to hold in his hands and under his control, during the lifetime of my said daughter, all that personal estate, the use of which is bequeathed to her in the third bequest, and to invest the same as he may see fit, and to pay the annual interest thereon to my said daughter, paying the first interest one year from my decease."

Said Ruth E. Rogers became 21 years old on the 13th of July, 1882, and about that time married Fred C. Moore, her present husband. On the 5th of July, 1886, she was appointed administratrix *de bonis non* of William Rogers, deceased. The two proceedings, instituted as above stated, were heard by the surrogate as one, and during the hearing, but before

the close of the evidence, Mr. Sexton, as executor, by permission of the surrogate, interposed a plea of the Statute of Limitations as a bar to " his being required to account for, or pay over, anything in behalf of his said testatrix, Lucinda Rogers, as administratrix of William Rogers." Although willing to account to some one for everything that came to his hands as executor, he deemed it his duty to account to Mrs. Moore and her children, born and to be born, under the trust in her mother's will, rather than to Mrs. Moore alone as next of kin of her father, or as administratrix *de bonis non* of his estate. In deciding the case the surrogate overruled said plea and required Mr. Sexton, as executor, to pay from the estate of Lucinda Rogers, deceased, to Ruth E. Moore, as administratrix *de bonis non*, the sum of $4,058.57. The appeal taken by Mr. Sexton, as executor, from said decree of the surrogate, was affirmed by the General Term without an opinion.

*Pliny T. Sexton*, appellant in person. The Statute of Limitations was and is a bar to the appellant being required, as executor of Lucinda Rogers, to account for or pay over anything in her behalf as administratrix of William Rogers. (2 R. S. 114, § 9; 2 R. S. 92, § 52; Code Civ. Pro. § 396; *McCartee* v. *Camel*, 1 Barb. Ch. 465; *Paff* v. *Kinney*, 1 Bradf. 5; *Smith* v. *Remington*, 42 Barb. 75; *Clark* v. *Ford*, 1 Abb. Ct. App. Dec. 359; *Clock* v. *Chadeagne*, 10 Hun, 101; *House* v. *Agate*, 3 Redf. 307; *In re Latz*, 33 Hun, 618; *In re Van Dyke*, 44 Hun, 394; *Butler* v. *Johnson*, 111 N. Y. 205; *In re Gregory*, 4 N. Y. S. R. 235.) The Statute of Limitations was pleaded in proper time, and was not and could not be waived by appellant. (*McCartee* v. *Camel*, 1 Barb. Ch. 465; *Van Vleck* v. *Burroughs*, 6 Barb. 341; *Smith* v. *Remington*, 42 Barb. 77; *Clock* v. *Chadeagne*, 10 Hun, 97; *Matter of Perry*, 2 Con. 536; *Matter of Clayton*, 1 Con. 453; *Matter of Van Wert*, 3 Misc. Rep. 563; *McLaren* v. *McMartin*, 36 N. Y. 91; *Cotter* v. *Quinlan*, 2 Dem. 33; *Shute* v. *Shute*, 5 Dem. 1; *Butler* v. *Johnson*, 111 N. Y. 212.) The inventory is *prima facie* evidence of the amount

of William Rogers' estate, for which his administratrix became accountable, and said inventory having been introduced in evidence by the respondent, the said Ruth E. Moore, the burden of proof clearly rests upon her to surcharge the same, if she is not concluded thereby. (*In re Mullon*, 74 Hun, 358; 145 N. Y. 98; *In re Ryalls*, 74 Hun, 205; *In re Shipman*, 82 Hun, 109.) It was error to receive in evidence the "book of inventories" kept by William Rogers. (*In re Ryalls*, 74 Hun, 205.) Surcharges made by the decree of the surrogate upon the estate of Lucinda Rogers for the benefit of the estate of William Rogers were erroneous. (*Clark* v. *Ford*, 1 Abb. Ct. App. Dec. 359; *Pitkin* v. *Wilcox*, 12 N. Y. S. R. 323; *In re Shipman*, 82 Hun, 112; *Caulkins* v. *Bolton*, 98 N. Y. 511.)

*Murganzy Hopkins* for Ruth E. Moore, respondent. The determination of the Surrogate's Court was right, and should be sustained. (*Johnson* v. *A. & S. R. R. Co.*, 54 N. Y. 416; *Lawrence* v. *Ball*, 14 N. Y. 477; *Butler* v. *City of Oswego*, 54 Hun, 476; 8 N. Y. Supp. 114.) If the facts before it warranted the Surrogate's Court in determining, as it did, that the property in question belonged to the estate of William Rogers, deceased, said court had jurisdiction to direct appellant to deliver it over to respondent, as administratrix *de bonis non*, without requiring an accounting by appellant as to the same. (Code Civ. Pro. § 2606.) If the trust property belonged to the estate of Williams Rogers, deceased, appellant, as executor, was and is forbidden by law to hold, interfere with, use or control the same in any way. (2 R. S. 448, § 11; *Shook* v. *Shook*, 19 Barb. 653; *McCabe* v. *Fowler*, 84 N. Y. 314; *T. Seminary* v. *Cole*, 18 Barb. 370; *Campbell* v. *Bowne*, 5 Paige, 34; 44 Hun, 460; Code Civ. Pro. § 2606.) The Statute of Limitations is not a bar. (Code Civ. Pro. §§ 414, 1819; *Butler* v. *Johnson*, 111 N. Y. 204; *In re Latz*, 33 Hun, 618; 110 N. Y. 661; *Gerould* v. *Wilson*, 81 N. Y. 573; *Matter of Watson*, 64 Hun, 369; *Casoni* v. *Jerome*, 58 N. Y. 315; *Lambert* v. *Craft*, 98 N. Y. 342; *In re Clark*, 119 N. Y.

427; *In re Wiley*, 119 N. Y. 642; *Johnson* v. *A. & S. R. R. Co.*, 54 N. Y. 418.) Appellant's contention that it was his imperative duty to plead the Statute of Limitations is untenable. (*Kennedy* v. *Thorp*, 51 N. Y. 174; *Phillips* v. *Suydam*, 54 Barb. 153; *Calkins* v. *Isbell*, 20 N. Y. 147; *Kellett* v. *Rathbun*, 4 Paige, 102–107; *Wyckoff* v. *Van Sicklen*, 3 Dem. 75; *Fowler* v. *B. S. Bank*, 113 N. Y. 450; *Morris* v. *Rexford*, 18 N. Y. 552; *In re Cooper*, 93 N. Y. 507; *Northampton Nat. Bank* v. *Kidder*, 18 J. & S. 246; *Moller* v. *Tuska*, 87 N. Y. 166; *Calanan* v. *McClure*, 47 Barb. 206.) A party cannot assume inconsistent positions in legal proceedings. (7 Am. & Eng. Ency. of Law, 22.) A party will not be permitted to assert or present evidence showing one state of facts to be true, and afterwards to assert and prove that his prior evidence is untrue or not to be relied upon. (*People* v. *Skeehan*, 49 Barb. 217.) The appellant should be personally charged with the payment of the entire costs in all courts. (*Peltz* v. *Schultes*, 20 N. Y. Supp. 337; 65 Hun, 622.) This court cannot look into the facts for the purpose of reversing the judgment. (*Koehler* v. *Hughes*, 148 N. Y. 507; *Otten* v. *M. R. Co.*, 150 N. Y. 400; Const. of N. Y. art. 6, § 9, Code Civ. Pro. § 191, subd. 3; *In re Bolton*, 141 N. Y. 554.) The findings of fact as made by the court are fully sustained by the evidence. (*Perkins* v. *Stimmel*, 114 N. Y. 359; *In re Clark*, 119 N. Y. 427–433; *Potter* v. *Ogden*, 136 N. Y. 391; *Berner* v. *Kaye*, 14 Misc. Rep. 1; *Drucker* v. *M. R. Co.*, 106 N. Y. 157; *In re Myers*, 131 N. Y. 409; Code Civ. Pro. §§ 2730, 2743; Redf. Surr. Pr. [5th ed.] 684; *In re Underhill*, 117 N. Y. 471; *Wheelwright* v. *Rhoades*, 28 Hun, 57.)

Vann, J. The primary question upon this appeal is whether the Statute of Limitations is a bar to an accounting, demanded of the appellant, as executor of Lucinda Rogers, for the purpose of compelling him to pay over to the respondent, as administratrix *de bonis non* of William Rogers, certain assets belonging to the said William that came to the possession of the said Lucinda, as his administratrix, and upon her death

came, with other property, into the possession of her executor. Lucinda Rogers became administratrix of William Rogers on the 8th of July, 1874, more than ten years prior to her death, which occurred on the second of January, 1885, and more than seventeen years before the commencement of this proceeding against the appellant. The respondent became twenty-one years of age on the 13th of July, 1882, or more than two years before the death of the said Lucinda. The right of the respondent, as an individual, to sue for her distributive share of the estate of William Rogers accrued July 8th, 1875, one year after the issue of letters of administration, and her right, in the same capacity, to require an accounting by the administratrix of William Rogers accrued January 8th, 1876, eighteen months after the issue of said letters. (2 R. S. 92, § 52; 114, § 9.) The period of her disability through infancy was not a part of the time limited for the commencement of legal proceedings by her, individually, but an extension of only one year is allowed by the statute after the disability ceases, and even that year is not allowed, provided the period of limitation continues to run after the year has expired. (Code Civ. Pro. § 396, subd. 3.) This proceeding was commenced by her, not as an individual, but as administratrix *de bonis non*, on the 27th of July, 1891, more than fifteen years after her right to sue as next of kin, or her right to require an accounting in that capacity had accrued, and more than nine years after she became of age. Under these circumstances, is the Statute of Limitations a bar to the proceeding?

According to the definition of remedies by the Code of Civil Procedure, this is a special proceeding, but the rule of limitation applicable thereto is the same as if it were a civil action. (Code Civ. Pro. §§ 414, 3333 & 3334; *Church* v. *Olendorf*, 19 N. Y. St. Rep. 700.) The chapter of the Code relating to the subject is entitled "Limitation of the time of enforcing a civil remedy," and by section 414 it is expressly applied to a special proceeding.

41

It is well settled that as to legacies not charged upon land, distributive shares of an estate and debts owing by the decedent, the statutes of this state give a concurrent remedy to legatees, creditors and next of kin, in courts of law and equity and in the Surrogate's Court, and that as the Statute of Limitations is a bar at law it is also a bar in the Surrogate's Court or in a court of equity. (*McCartee* v. *Camel*, 1 Barb. Ch. 466; *Paff* v. *Kinney*, 1 Brad. 5; *Smith* v. *Remington*, 42 Barb. 75; *Clock* v. *Chadeagne*, 10 Hun, 97; *House* v. *Agate*, 3 Redf. 307; *Clark* v. *Ford*, 1 Abb. Ct. App. Dec. 359; *Butler* v. *Johnson*, 111 N. Y. 205.) These decisions were made under the Revised Statutes and before section 2606 of the Code of Civil Procedure was enacted. (L. 1880, ch. 178, § 3356.) Under the Revised Statutes a creditor, legatee or next of kin could require an executor or administrator to render an account of his proceedings. (2 R. S. 92, § 52.) They also provided that whenever the authority of an executor or administrator should cease or be revoked or superseded for any reason, he might be cited to account before a surrogate at the instance of the person succeeding to the administration, the same as in the case of a creditor. (2 R. S. 95, § 68.) In such a case the executor or administrator, after his removal, could voluntarily come into court and cite his successor to attend an accounting and settlement of his proceedings, and the settlement and account thus made had the same effect as it would have had in the case of a settlement at the instance of a creditor. (Id. § 69.) The Revised Statutes, however, did not require the predecessor in administration to deliver the unadministered assets over to his successor, nor authorize the surrogate to make a decree for the distribution thereof, and there was no statute empowering an administrator *de bonis non* to call the executor of his predecessor to an accounting in Surrogate's Court. (Id. § 71.) Authority of that kind was first conferred by section 2606 of the Code of Civil Procedure, which went into effect on the first of September, 1880. The proceeding now before us was instituted under that section, not by Mrs. Moore as an individual,

but as the successor in administration to her mother upon the estate of her father. She thus invoked a new remedy, that had been provided by the legislature before she was of age, and hence before any defense, based upon the Statute of Limitations, had become vested so as to be effectual as against subsequent legislation. The section of the Code creating that remedy, as enacted in 1880, was as follows: " Where an executor, administrator, guardian, or testamentary trustee dies, the Surrogate's Court has the same jurisdiction, upon the petition of his successor, or of a surviving executor, administrator, or guardian, or of a creditor, or person interested in the estate, or of the guardian's ward, to compel the executor or administrator of the decedent to account for and deliver over any of the trust property which has come to his possession, or is under his control, which it would have as against the decedent, if his letters had been revoked." (Code Civ. Pro. § 2606.) The section was amended in 1884 and in 1891 so as to amplify the remedy somewhat, and to make it more definite and certain, but its nature and purpose sufficiently appear in the original enactment. It is obvious that the new remedy thus provided could not be applied for until after the death of the executor or administrator first appointed, or, in the case before us, not until after the death of Lucinda Rogers, the first administratrix of William Rogers, which took place on the second of January, 1885, or more than six, but less than ten, years before this application was made on the 27th of July, 1891. The new administratrix could have been appointed " at any time " after the death of her mother, and the application to require the appellant to account could have been made immediately after such appointment. (Code Civ. Pro. § 2643; *Matter of Wiley*, 119 N. Y. 642.) If, therefore, the six years' Statute of Limitation applies to this proceeding, it is a bar, but if the ten years' statute applies, it is not a bar. If Mrs. Moore had applied as next of kin, her proceeding would have been analogous to an action at law to recover a demand that was due, and, hence, would have been governed by the shorter period named. She applied, however, as

administratrix *de bonis non*, and in that capacity she might
have represented many different interests.   The fact that she
was the sole next of kin was merely a coincidence, and her
rights as administratrix, after having been duly appointed, are
the same as if there were others interested as legatees, dis-
tributees and creditors.   She had an interest in seeing that
the account of her mother as her predecessor in adminis-
tration was correctly made, and she could have filed a
bill in equity with that object in view as well as for the
discovery of assets.   (*Wiggin* v. *Swett*, 39 Am. Dec. 716,
719.)   This proceeding is in the nature of a bill of discovery,
because the appellant, having come into the possession of the
property and papers of Mrs. Rogers, the deceased administra-
trix, is presumed to be in a condition to furnish more accurate
information than any one else, and until the enactment of the
section in question there was no way to compel him to disclose
what he knew, except by filing a bill in equity.   As we have
already seen, the administrator of a deceased representative
could not be required to account for, or deliver, unadminis-
tered assets to the successor in administration by any proceed-
ing in a Surrogate's Court prior to 1880.   Until that time the
only remedy was a bill in equity to discover what the admin-
istrator of the deceased administrator had in his hands belong-
ing to the estate represented by the latter, and, upon equitable
principles, to compel a delivery thereof to the new represen-
tative.   The remedy at law was inadequate, not only for the
want of discovery, but because, in many cases, the identity of
the assets would be changed.   This subject was carefully con-
sidered by the Supreme Court in *Matter of Latz* (33 Hun,
618), where an administrator *de bonis non* sought to compel
the executor of his predecessor to account, and the petition
was dismissed by the surrogate upon the ground that the six
years' statute was a bar, but the General Term reversed, hold-
ing that the ten years' statute only applied.   We quote and
adopt, as applicable to this proceeding, the language of Judge
BRADLEY in deciding that case :  " This proceeding is an equi-
table one in form, and in relief sought.   The petitioner does

not proceed to enforce the payment to him as a creditor or next of kin, but simply to require the representative of his predecessor administrator to account, and to deliver to him what it will appear in such accounting he may be entitled to. This does not come within the case of *Clark* v. *Ford* (1 Abb. Ct. App. Dec. 359; *S. C.*, 3 Keyes, 370, and 34 How. Pr. 478; 3 Abb. [N. S.] 245). There the petitioners were legatees, and their proceeding was characterized as one to enforce payment. The Statute of Limitations takes only the force which its provisions give, and the fact that a remedy existing in behalf of one party may in its result operate indirectly for the benefit of another, whose right of action is barred by the statute, does not necessarily force the application of the statute so as to bar the former. On the expiration of the requisite time it merely bars the remedy of those who come within it. To that extent it is a statute of repose (*Pratt* v. *Huggins*, 29 Barb. 277), and does not pay the debt, or produce presumption of payment. (*Johnson* v. *A. and S. R. R. Co.*, 54 N. Y. 416; 13 Am. R. 607.) The remedy which the petitioner had when he commenced this proceeding was not concurrent with any right of action in him at law, and therefore was not within the six years' limitation, but would come within that of ten years. And it is difficult to see how the fact that the remedy of the next of kin is barred can affect his for the purpose of the question as presented here. But a remedy by petition like this did not exist until September 1, 1880, when section 2606 of Code of Civil Procedure became operative. The petitioner took from that whatever right he had in that respect, and without the death of the chief administrator or other cessation of his trust that could not produce occasion for such relief by a successor as that prayed for. No reason appears why the legislature could not create a remedy when none before then existed in a case like this. The deceased executor could not, nor did his representative have any vested right in the estate of the testator, merely because there was no remedy to reach it if such were the case."

The subject was again examined in *Pitkin* v. *Wilcox* (12

N. Y. Supp. 322) and the same result reached, upon the ground that an application by an administrator *de bonis non*, under section 2606, to compel an accounting by the administrator of his deceased predecessor, was not concurrent with any right of action at law.

We think that the nature of the relief afforded by the section under consideration is such as cannot be had in an action at law, and that only a court of equity and the Surrogate's Court have concurrent jurisdiction of the subject. Hence, this proceeding is controlled by the same Statute of Limitations that applies to suits in equity, and the courts below were right in refusing to dismiss the application upon the ground that it was barred. This makes it unnecessary to consider the questions of waiver, estoppel or acknowledgment, or to pass upon the effect of section 1819 of the Code.

The decree of the surrogate requires the appellant to account for and pay over to the respondent, as administratrix *de bonis non*, the sum of $4,058.57, and so far as the findings upon which the decree is founded have any support in the evidence, they are conclusive upon this court and beyond our power to review. (*White* v. *Benjamin*, 150 N. Y. 258.) As, however, the judgment appealed from was not rendered by an Appellate Division, but by a General Term, the old rule applies, and if an essential finding was made without the support of any evidence, it was an error of law which it is our duty to correct. The learned surrogate found that the said William Rogers, at the time of his death, was the owner and in possession of personal property, goods and chattels of the value of $4,500, and that the average yearly net profits realized from the business of said William Rogers, as continued by Lucinda Rogers after his death, was at least $900, all of which she had received. These findings are challenged by appropriate exceptions, and the case as settled contains all of the " evidence, testimony and proceedings." It appeared that Mr. Rogers, at the time of his death, owned thirty-five acres of farming land, upon which there was a dwelling house in which he, his wife, daughter and one George Gifford lived together. There was

situated upon the farm a building known as the canal lot grocery, in which Mr. Rogers, for some years prior to his death, had carried on a small grocery business with the assistance of said Gifford as his clerk and bookkeeper. After the death of her husband, Mrs. Rogers carried on the farm and grocery business, in her own name, with the aid of Mr. Gifford. A book in the handwriting of Mr. Gifford, purporting to be a yearly inventory, from 1870 to 1881, of the assets of Mr. Rogers in his lifetime and of Mrs. Rogers after his death, was put in evidence by the respondent, under the objection and exception of the appellant, and constitutes the evidence relied upon to justify the findings so excepted to as aforesaid. No connection, except as stated, was shown between Mr. and Mrs. Rogers and the book, which is full of inaccuracies, some apparently unintentional and others appearing to be attempts at willful deception. The inventory purports to show what the entire assets, real and personal, were worth on the first of January in each year, and also to show the profit made during the previous year. In order to show the profit each year, the value of the assets as shown by the inventory of the year preceding purports to have been deducted, yet on the first of January, 1878, when the assets, real and personal, are inventoried at $12,928.71, the assets of the previous year are deducted at $11,964.90 instead of at $13,112.56, the actual footing. On the first of January, 1879, the assets are stated to be $12,698.35, but those of the previous year are deducted at $11,235.60 instead of $12,928.71, the correct amount. In the inventory of January first, 1880, " cash on hand, $443.73," is included twice and in that and the previous year the value of the buildings is increased and various misstatements made apparently for the purpose of showing a profit instead of a loss. This inventory, when the obvious errors are corrected, does not show the amount of assets on hand at the time of Mr. Rogers' death as found by the surrogate. Excluding the valuation of real estate from consideration, the amount of personal property on the first of January, 1870, after deducting the debts, was $684; 1871, $698.18; 1872, $1,626.84;

1873, $2,807; 1874, $3,786.93; 1875, including the propor-
tion of profit to May 14, 1874, when Mr. Rogers died, $4,241,
but apparently without deducting debts. This included the
share of both mother and daughter. The inventory of her
husband's estate filed by Mrs. Rogers on the 20th of October,
1875, which was put in evidence by the respondent, shows
assets, after the payment of debts, to the amount of only
$2,986.42. That inventory was *prima facie* evidence both as
to the extent and value of the personal property left by Mr.
Rogers and cast the burden upon the respondent of showing
either that articles were omitted therefrom, or that a greater
sum was realized than the appraised value. (*Matter of Mul-
lon*, 145 N. Y. 98; 74 Hun, 358.) In 1883 Mrs. Rogers sold
her one-third interest in all the personal property on the farm
and in the grocery business to the husband of the respondent
for the sum of $566.66, and on the trial it was stipulated that
no part of this property came into the appellant's hands.
The Gifford inventory, instead of showing a profit each year,
as it purports to, should show, after correction of errors,
sometimes a small profit and sometimes a loss. The profits
during the seven years that the inventory was kept after Mr.
Rogers' death, instead of being a yearly average of $900,
as found by the surrogate, averaged but about $150, or
no more than a fair rental for the real estate, which
is not here involved. The serious discrepancies are illus-
trated by the fact that, on the business of 1877, instead of
a gain of $963.81, there was a loss of $183.85; and the next
year, instead of a gain of $1,662.75, there was a loss of
$230.36, making a difference of over three thousand dollars
in two years. The learned surrogate seems to have been mis-
led by this erroneous inventory into making findings which
cannot be sustained by any view of the evidence. Moreover,
there was no inventory whatever after 1881, and no attempt
is made to designate or identify the separate assets of Mr.
Rogers, nor does it appear what changes took place between
1881 and 1885, when Mrs. Rogers died, nor how much, if
any, of her separate estate was included in the valuation.

The increase in the value of the real estate appearing in the inventory, so far as it represents improvements made upon realty belonging to the respondent subject to the dower right of her mother, should have been taken into account and credited as a practical accounting to the extent of the value actually conferred. There are other errors in the inventory which we have no time to point out, and other errors in the record which it is unnecessary to consider, as a new trial must be granted. We will close our review by a single reference to an error of addition appearing in the "summary statement" annexed to the decree as a part thereof, and which was duly excepted to. The "total debits" are stated therein at $4,784.55, whereas, when correctly added, they amount to but $3,789.06, and this error enters into "the balance for distribution" for which the appellant was held liable.

The judgment should be reversed and a new trial granted before the surrogate, with costs to abide event.

All concur.

Judgment reversed.