(36 App. Div. 77.)

### In re SCHLESINGER'S ESTATE.

### MAY et al. v. SCHLESINGER et al.

(Supreme Court, Appellate Division, First Department. January 13, 1899.)

1. ABATEMENT AND REVIVAL—SURROGATE'S COURT—SPECIAL PROCEEDING.
    Code Civ. Proc. § 755, providing that a special proceeding shall not abate if the right to the relief sought survives, does not apply to proceedings in surrogate's courts; and hence a special proceeding in such court abates on the death of a sole party thereto.

2. SAME—EXECUTOR'S ACCOUNTING—LIMITATIONS.
    A proceeding to compel executors of a decedent to account for his dealings as executor of petitioner's estate is a special proceeding, and made subject to limitations prescribed by Code Civ. Proc. § 414.

3. SAME.
    Where a contestant obtained leave to file objections to an executor's account, but took no further steps until after 15 years, and after the executor's death, when he proceeded against decedent's executors to compel

an accounting, such proceeding is barred by either the six or ten years' limitation, in the absence of facts preventing the running of the statute.

4. SAME—RELIEF FROM LIMITATION.

Code Civ. Proc. § 405, provides that if an action is begun within the time limited, and involuntarily discontinued, "plaintiff" may commence a new action for the same cause after it was barred by limitation. *Held,* that one who appeared in a proceeding by an executor to settle his account, and secured leave to file objections, was not a "plaintiff"; and hence, that proceeding having been discontinued, he could not maintain a new proceeding for an accounting after the limitation had expired.

5. SAME.

Code Civ. Proc. § 412, provides that where a defendant has set up a counterclaim, and the action is discontinued, the time intervening between the commencement of the action and its termination is not a part of the time limited for the commencement of an action by defendant on the counterclaim. *Held* not to apply to a defendant who had not actually filed his claim as a counterclaim, and hence did not relieve a contestant of an executor's account, who obtained leave to file objections, but did not file them until after his claim was barred.

6. SAME—LACHES—DISCRETION.

One of the executors of an estate began proceedings to settle his account, in which a contestant obtained leave to file objections claiming a waste by his co-executor. No further proceedings were had until after the executor's death, 15 years later, when contestant applied to require decedent's executors to show cause why they should not settle the account of such deceased executor. *Held* that, while the granting of permission to proceed against decedent's executors alone was within the discretion of the court, such laches on the part of petitioner required a denial of the application.

Appeal from surrogate's court.

Proceeding by Solomon H. Schlesinger and another against Emita W. May and another, as executors of Lewis May, deceased, for an accounting of decedent's dealings as executor of the estate of Herman Schlesinger, deceased. From a decree requiring them to account (In re May's Estate, 53 N. Y. Supp. 710), the executors appeal. Reversed.

Argued before VAN BRUNT, P. J., and RUMSEY, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

Julius J. Frank, for appellants.
T. B. Chancellor, for respondents.

RUMSEY, J. Herman Schlesinger died in May, 1869; and, in November of that year, his will was duly admitted to probate by the surrogate of the county of New York, and letters testamentary thereon were issued to Lewis May and Julius Epstein, who qualified and entered upon the duties of their office. In the year 1876, proceedings were begun by the executors for a final accounting; and on the 10th day of March, 1876, a decree was entered in the surrogate's court, settling the accounts of the executors as presented by them, and decreeing, among other things, that Lewis May applied to be discharged as executor and trustee under the will, the letters testamentary granted to him were revoked, and he was discharged from his trust. At that time, the respondent Solomon Schlesinger was of full age, and Edward Schlesinger became of age on the 7th of July, 1876. In the summer of 1879, Epstein, who had been for three years the sole executor, became insolvent, and

fled the country. On the 22d day of March, 1880, the two persons who are respondents here applied in the proceeding for a final accounting, that the decree of the surrogate might be opened, to the end that they might file objections to the account, and surcharge it because of certain misappropriations and losses of the estate, which, it is claimed, began in 1873, and continued through the years 1874 and 1875. An order was made by the surrogate in that proceeding, vacating the decree, and giving leave to the two Schlesingers to file objections to it. From that order an appeal was taken to the general term, and that court modified the order of the surrogate by opening the decree and accounting only so far as to permit the petitioners to assert and try in the surrogate's court the question of the liability of Lewis May, as executor and trustee, for the losses of the assets of the estate, if any, which had been sustained by his co-executor and co-trustee, Epstein, prior to the making of the decree. That order contains some limitations as to the effect upon May's rights of the opening of the account, which it is not necessary to consider further in this connection. This order of the general term was entered on the 6th day of February, 1882. No further proceedings were taken under the order for $15\frac{1}{2}$ years, and until after the 22d day of July, 1897, when Lewis May died. After that, and on the 9th of December, 1897, objections to the account were filed by the two Schlesingers, and they undertook to enter an order of reference in the original proceeding. That having been done, the petition in this matter was filed, asking for a citation directed to the executors of May, requiring them to show cause why they should not render and settle the account of Lewis May, deceased, as executor of the said Herman Schlesinger, deceased, and why that account should not be judicially settled so far as to permit these two petitioners to try the liability of Lewis May as executor and trustee to any extent, and to what extent, if any, at the time the decree of March 10, 1876, was made, for the loss of the assets of the estate, if any, sustained by his co-executor and co-trustee, Epstein, before the making of the decree, and for which Lewis May was properly chargeable. Upon the hearing of this petition before the surrogate, the executors of May interposed an answer, setting up, among other things, the statute of limitations as a reason why the matter should not proceed further. The learned surrogate before whom the proceeding was had held that the statute of limitations was not a defense, and entered a decree requiring the executors of Lewis May to file an account of his proceedings as executor of the estate of Herman Schlesinger, to the extent and for the purposes asked for in the citation which had been issued to them, and from that decree this appeal is taken.

It is insisted on the part of the appellants that the former proceeding abated by the death of Lewis May, on the 22d of July, 1897; that this proceeding is a new one for an accounting; that it is barred by the statute of limitations; and that there is no provision in the Code which saves the proceeding from the running of the statute. In the absence of any statute upon the subject, when

a sole party to an action at law died before trial, the action abated, and there was no way to revive it. Evans v. Cleveland, 72 N. Y. 486. The right to revive and continue the action in the name of the executor of a deceased party, or against such executor, depends solely upon the statute. In re Palmer, 115 N. Y. 493, 22 N. E. 221. Before 1891 there was no statute which prevented the abatement of a special proceeding by the death of a sole party plaintiff or defendant. In re Palmer, supra. In 1891, however, section 755 of the Code, treating of that subject, was amended by providing that a special proceeding did not abate in any event if the right to the relief sought therein survived or continued (Code Civ. Proc. § 755); but this section does not apply to the surrogate's court, and there is now no statutory provision which prevents the abatement of a special proceeding in that court upon the death of a sole party plaintiff or defendant; and therefore when, on the 22d of July, 1897, Lewis May died, the special proceeding then pending abated. Such seems to have been the understanding of the petitioners in this matter, for they do not ask that the executors of Lewis May shall be substituted in his place as petitioners in the proceeding for an accounting which was begun by him, but for a new citation to be issued to them requiring them to file an account. This is a very different proceeding from the former one. In the former, Lewis May was the moving party. He had taken steps to file an account and to be discharged as an executor, and the petitioners here, who were parties to that accounting, were the persons proceeded against; while this proceeding is against the executors of Lewis May, for the involuntary accounting by them of his doings in the matter of the estate of Schlesinger. They are brought into court unwillingly, and instead of occupying the position of moving parties, as May did, they are practically made defendants in a proceeding begun against them, and asserting against them, as executors, a right which they claim does not exist. The proceeding is clearly one within section 2726 of the Code of Civil Procedure, to compel a judicial settlement of the account of an executor or administrator, and might have been taken within one year after the letters had been issued to May, or at once after those letters had been revoked, or his powers had ceased, pursuant to the provisions of that section. That is a special proceeding, and the statute of limitations applies to it. Code Civ. Proc. § 414. Assuming that the right to this proceeding accrued to these petitioners on the 10th day of March, 1876, when the decree was entered revoking the letters testamentary to May, more than 21 years elapsed before the presentation of this petition, which is the act fixed by the statute to be deemed the commencement of this proceeding. Id. § 2517. Either the six-years or the ten-years statute of limitations runs against the right to continue this proceeding (In re Rogers' Estate, 153 N. Y. 316, 47 N. E. 589); but it is unnecessary to consider here which of them applies. Unless, therefore, something has happened to prevent the running of the statute, this proceeding is clearly barred.

But it is claimed by the respondents that the statute has not

run, because of the provisions of section 405 of the Code of Civil Procedure. That section provides, in substance, that if an action is begun within the time limited therefor, and a judgment therein is reversed on appeal, without awarding a new trial, or the action is terminated in any other manner than by a voluntary discontinuance, a dismissal of the complaint for neglect to prosecute the action, or a final judgment upon the merits, the plaintiff may commence a new action for the same cause after the expiration of the time so limited, and within one year after such termination. Although this section applies in terms only to an action, yet the provisions of sections 414 and 415 extended it to a special proceeding. The question is, therefore, whether these petitioners occupied such a position in the former proceeding that, within the reading of this statute, they are entitled to bring another proceeding within a year after the termination of that one. It will be noticed that this section applies in terms only to a plaintiff in an action, who is, by section 3338, defined as the party prosecuting a civil action, in contradistinction to the party prosecuted, who is termed the defendant. According to the reading of section 415 of the Code of Civil Procedure, it is fair to infer that the person presenting a claim for relief, upon which he begins a special proceeding, is to be regarded as the plaintiff in that proceeding; and, conversely, of course, those against whom he presents that claim are to be regarded as the defendants.

The original proceeding for an accounting, which was begun in 1876, is alleged to have been begun by the executors, Epstein and May. In the ordinary course, and before any proceedings could have been taken in that matter, it was necessary that they should have procured a citation to be issued against those who were interested in the estate of Herman Schlesinger, and served upon them, so that they would be parties to the proceeding for an account. It is to be presumed that that was done, at least as to these two petitioners, because we find that in 1880 they obtained an order to show cause, in that proceeding, why the account should not be opened, and they be permitted to file objections. This they could not have done unless they were parties to the proceeding, or unless they made themselves parties at that time, as against the executors of Herman Schlesinger, who had taken steps to file their account. In either case they were not the prosecuting parties in that matter, and they did not occupy, as to that, the position which a plaintiff in an action occupies. The essential difference between the plaintiff and the defendant in an action or a proceeding is that the plaintiff is the moving party; he inaugurates the proceeding; he takes steps to bring the other parties into court by an adverse proceeding against them; and it is because he comes into court asserting a claim, and asking for relief against them, that he becomes the plaintiff, and they, unwillingly brought into court upon his complaint, become the defendants. That was the relative situation of May and these petitioners with regard to the proceeding which was begun by May and Epstein for a final accounting, and for his discharge. It is said, however, that, although they were

nominally the parties proceeded against in that matter, yet they were practically plaintiffs, because, after the order of the general term, there rested upon them the necessity of taking the first step in the proceeding, by reason of the permission given to them to file their objections to the account. But that claim ignores the actual condition of affairs. When these persons were brought into that accounting by the service of the citation, or when they came into the accounting by virtue of the order to show cause in the proceeding which was then pending, they came into a proceeding the originators of which were asking relief against them. If there had been no default upon their part, they would have been entitled, upon the return of the citation, to file objections to the account, and to surcharge it. And, if they had actually filed their objections after the default had been opened, they would have stood in the same relation to the proceeding as though they had filed them in time. But there can be no doubt that while these objections, had they been interposed before the proceeding abated, would have required them to introduce proof to establish their charges against the executors, they would not have been put in any other situation than any other defendant is put in when he sets up an affirmative defense or a counterclaim. He does not cease to be a defendant in the action or proceeding although he interposes an answer which puts upon him the duty of proving a claim against the moving party, which shall either diminish the amount to which that party is entitled, or obtain an affirmative judgment against him. The person thus asserting a defense or counterclaim does not change his relative position in the action, nor would he do so in a special proceeding. He remains still in the same situation. He was a defendant when the proceeding was begun, and he remains a defendant until the proceeding is finally ended. Section 405, in terms, applies only to a plaintiff, and it was not intended to give any rights to a person who was not a plaintiff in an action, although he might have asserted in that action the right to affirmative relief. This clearly appears from the provisions of section 412, by which it is enacted that, where the defendant in an action has interposed an answer in support of which he would be entitled to rely at the trial upon a defense or counterclaim then existing, the dismissal of the action after the statute of limitations has run against his defense or counterclaim does not bar his right to insist upon his affirmative relief in another action. If section 405 had applied to the case of a defendant asserting an affirmative right, it is clear that the provisions of section 412 would have been entirely unnecessary. For these reasons, we conceive that the petitioners' time to begin this proceeding for an involuntary accounting was not extended, under the provisions of section 405, to one year after the death of Lewis May.

Nor are they within the provisions of section 412. That section only applies in terms to a defendant who has interposed the defense or counterclaim in an action or special proceeding. The defense or counterclaim referred to is one that might be the subject of a separate action. If the defendant chooses to treat it as such, the

statute of limitations runs against it, as in any other case. Until he has elected not to sue on it by setting it up as a defense in the action against him, it is subject to the bar of the statute. But when he elected to try this claim in an action against him, over which he had not full control, justice required that, if that action was determined without giving him an opportunity to establish his claim, he should still be at liberty to sue upon it. But this right depended upon his actually exercising his election to recover his claim in the action pending against him; for, until he had done that, he was still at liberty to sue upon it as an independent cause of action, and, so long as that option exists, the statute is running against the claim. The right to sue on the claim is not waived until the answer setting it up has been actually interposed. Section 412 therefore does not apply to a party who has not actually interposed his claim as a defense or counterclaim in the action or proceeding against him. This these petitioners had never done. When Lewis May died, on the 22d of July, 1897, the petitioners here, although for 15½ years while he was alive they had the right, by order, to interpose these objections and surcharge his account, had not seen fit to exercise it. Lewis May had never been apprised of the claim made against him, but the matter stood entirely upon a permission given by the court to these people to make such a claim if they desired to do so. Until they had interposed that claim against Lewis May, they were not within the provisions of section 412, and therefore they are not now at liberty to say that the time during which the other proceeding was still pending should not be reckoned as a part of the time limited for the filing of their petition. The justice of this interpretation is obvious in this case. The charge against Lewis May was not that he himself had made away with any of the assets of this estate, but he was sought to be made chargeable with the losses sustained by his co-executor and co-trustee. There is no claim that he had anything to do with these losses, nor is there any reason to believe that he had knowledge of the extent of them, or the manner in which they accrued. After this great length of time, during which Epstein has disappeared, and May is dead, it would be imposing upon these executors a burden much greater than they ought to bear to compel them to undertake the duty of defending their estate against charges of dishonesty or defalcation of a third party, of which they can have no knowledge, and with regard to which it would be extremely difficult for them to obtain any information. For these reasons, we are of the opinion that the statute of limitations had run against the right of the petitioners to begin this proceeding.

But it appears that the original proceeding was begun by Epstein and May as executors; and for that reason, as there is no proof that Epstein is dead, it may be claimed that the death of May did not wholly abate the proceeding, because one of the parties to it was still living, and therefore the court should substitute the executors of the one who is dead. Even if that were so, there would be no absolute right on the part of these petitioners that

the executors of May should be substituted, but it would rest entirely in the discretion of the court. When an application is made to the court to exercise its discretion, in such cases a great laches on the part of the applicant is always regarded as a sufficient answer, and will operate to require the refusal of the order. In this case there has been a delay to press these proceedings, from the 6th of February, 1882, until the 9th of December, 1897. This delay is entirely unexplained, and it certainly constitutes so great laches that, even if the matter is one within the discretion of the court, it should operate to require the denial of the application. Pringle v. Railroad Co., 157 N. Y. 100, 51 N. E. 435; In re Palmer, . 115 N. Y. 493, 22 N. E. 221.

For these reasons, we are of the opinion that the decree of the surrogate should be reversed, with costs, and the application of the petitioners should be denied, with costs. All concur.